### PEELLE CO. v. MORRISON & SKINNER CO.

(Circuit Court of Appeals, First Circuit. November 22, 1923.)

No. 1666.

Patents ⊚⟺328—871,735, for elevator door, held void for lack of invention.

The Rashkin patent, No. 871,735, for a door for freight elevators, carrying a bar at its top, which, when the door slides downward in the shaft, in opening rests upon a support at the level of the building floor to form a bridge over which trucks may be moved in and out of the car, *held* void for lack of invention.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by the Peelle Company against the Morrison & Skinner Company. Decree for defendant, and complainant appeals. Affirmed.

See, also, Peelle Co. v. Rashkin (D. C.) 194 Fed. 440; Id., 222 Fed. 293, 138 C. C. A. 19.

Henry J. Lucke, of New York City (George K. Woodworth, of Boston, Mass., on the brief), for appellant.

Louis H. Harriman, of Boston, Mass., and Charles A. Brown, of Chicago, Ill. (Brown, Boettcher & Dienner, of Chicago, Ill., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and LOWELL, District Judge.

LOWELL, District Judge. This is an appeal from a decree of the District Court for Massachusetts dismissing a bill in equity for the infringement of claims 1 and 5 of letters patent 871,735, issued on November 15, 1907, to Joseph Rashkin, and assigned to the plaintiff. These claims are as follows:

1. The combination with an elevator shaft having a door opening in the wall thereof and an elevator car movable in the shaft of a door supported to slide in said shaft between the wall of the latter and the car, a bar carried by the upper edge of the door and movable therewith, and means for arresting and rigidly supporting the bar in register with the building floor whereby said bar will provide a fixed bridge between the car floor and the building floor.

⊚⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. The combination with an elevator shaft having a door opening in the wall thereof and an elevator car movable in said shaft, of a door supported to slide in said shaft between the wall of the latter and the car, a bar carried by the upper edge of the door and movable therewith, and means for arresting the movement of the bar when in register with the building floor whereby the bar will provide a fixed bridge between the car floor and the building floor, said means being located below the bar and acting independently of the carrying cables for the doors.

The invention is admirably described in the plaintiff's brief, from which we quote:

"The structure of the Rashkin patent, in suit, No. 871,735, November 19, 1907, has to do with elevator doors of a type commercially known as counterbalanced freight elevator doors, usually consisting of two sections vertically slidable in the same plane, but having movement in opposite directions. The two sections are connected by chains at opposite sides of the door, passing over sheaves above the upper door section, one end of each chain being connected with the upper door, and the other end being connected with the lower door adjacent the top bar thereof. Such elevator door structures are guided in their movements by tracks or guides extending from adjacent the top to adjacent the bottom of the shaft and forming a part of the wall structure. With counterbalanced doors, the guide rail structure, the doors and all of the operating mechanisms are located close to the wall within an elevator shaft, and by reason of irregularities at different points of an elevator shaft, the elevator car itself is spaced away from the wall of the shaft a distance of between four and five inches as a minimum, and greater distances when the width of a door opening requires a heavier and thicker door construction, so that a considerable gap exists between the edge of the sill of a door opening and the platform of an elevator car, which prior to the Rashkin invention made it difficult for wheeled trucks to pass between the floor of a building and the elevator car without 'spilling' the load.

"The purpose of the structure of the patent in suit was to partially close the gap between the door sill and the elevator door by means of the door structure itself, while still allowing sufficient space for the movement of the elevator car, and yet have none of the load of passing vehicles transmitted to the connecting chains and the weak sheaves over which they pass, while at the same time avoiding any pockets above the top of the lower door section, when in the open position, into which matter falling from trucks passing between the floor of a building and the elevator car could drop and accumulate.

"The patentee Rashkin invented a particular structure for securing these results, by providing a counterbalanced door structure having its usual operating mechanism, but provided with a top bar for the lower door section, so constructed as to sustain the maximum load to which the door would be subjected, and embodied in this top bar means, which as the lower door section was moved downwardly would arrest this downward movement when the door reached a position with this top bar substantially flush with the door sill, and sustain this top bar rigidly in its position so that any loads passing thereover would be transmitted by such means directly to the wall of the shaft and thus relieve all portions of the door below the top bar and all of the running gear of the door from any of the strains of these loads. This structure effectively closed the gap between the sill and the elevator car, leaving the necessary space to permit movement of the elevator car, but permitting loaded trucks to pass between the different floors of the building and the elevator car, without such jars and jolts as would interfere with the rapid movements of these trucks or would disturb the loads thereon."

In the lower court Judge Anderson, in the course of his oral opinion, says:

"In my view there is no invention in the use of this upper edge of this sinking lower half of a counterbalanced elevator gate to fill the gap in the roadway. The Meaker counter-balanced elevator doors have been in use for about 50 years. The lower part of the gate sinks down into a space

between the elevator and the sill or floor of the building, in the use of the Meaker counterbalanced elevator door; and freight elevators have been used with trucks since the time when the memory of living men runs not to the contrary. If there was a substantial space between the elevator and the floor there would be a bump, annoying to the truck operator and destructive of things which might be jarred off the truck and smashed. Trucking needs a smooth roadway.

"To my mind the utilization of the sunken part of the door to fill, substantially, the gap which necessarily must exist between the elevator and the floor space, is a mere mechanical adaptation of obvious means to obvious needs. I do not believe it rises to the heights of invention at all. * * * It cannot be said that every common-sense adaptation of mechanical means to an end is invention."

With this statement we entirely agree. It requires no invention to affix a bar to the upper edge of a downwardly sliding door and then provide means for stopping the door and bar at any desired point. Day v. Fair Haven, etc., Railway Co., 132 U. S. 98, 10 Sup. Ct. 11, 33 L. Ed. 265. This solution of the problem would be obvious to any mechanic.

The plaintiff contends, however, that the patent has been upheld by the Circuit Court of Appeals for the Second Circuit and that we should follow this decision. Peelle Co. v. Rashkin, 222 Fed. 293, 138 C. C. A. 19. In this contention he is in error. It is true that Judge Lacombe in delivering the opinion, which dealt principally with prior use, says:

"No prior art disclosed in patents or publication negatives invention. The decision below was based entirely upon an alleged public use prior to the date of application." 222 Fed. 293, 294, 138 C. C. A. 19.

But the opinion contains the following paragraph at the end:

"The conclusion above reached makes it unnecessary further to discuss the case, but we may add that, in our opinion the estoppel of Joseph Rashkin to attack the validity of his own patent disposes of this case. His wife Tillie has invested money in the business, and he contends that she alone is interested; he being merely her general manager. We do not find the testimony of the defendants persuasive, but think it is really his business; the wife being brought in with the expectation thereby of avoiding estoppel." 222 Fed. 293, 297, 138 C. C. A. 19, 23.

The decision of the case is contained in the above-quoted paragraph.

The result which we have reached renders it unnecessary to consider the question of prior use, which was much pressed at the argument.

The decree of the District Court is affirmed, with costs to the appellee in this court.